Mr. Quintanilla, am I pronouncing that right? Yes, your honor. Thank you. And for the government respondent, Ms. Marshall. So we'll proceed with petitioners argument first. The case is also set for 10 minutes per side. Please proceed. May it please the court. I am Edgardo Quintanilla, counsel for petitioner Mr. Pleitez. The actual persecution in this case took place in 2016. That's when Mr. Pleitez fled El Salvador. In 2016, Mr. Pleitez was a fully licensed attorney practicing law in a small town. His law firm was located at his home. And it was at his home that a person associated with a gang came and demanded his services as a lawyer, which Mr. Pleitez declined. And for that reason, he was threatened with death, not only to him, but to his family. There are four factors that are relevant to this case. One, the immigration judge found Mr. Pleitez credible. Moreover, the council for the government did not object to any and all documentation in Mr. Pleitez's declaration. Therefore, all facts, the statements submitted by Mr. Pleitez should be deemed to be true. And all the evidence on country conditions should be deemed to be uncontradicted. More importantly, before the BIA, counsel for the government did not file a brief. There is no appellate brief before the BIA. And the decision by the BIA was unpublished, which means that this court owes very little deference to that decision, minimal deference, and it should be rejected for being persuasive. Substantial evidence supports the contentions of Mr. Pleitez, that but for his being an attorney in El Salvador, he was persecuted by death by a powerful gang. In 2016, this particular gang, in 2016, El Salvador was deemed to be the murder capital of the world, holding a disproportionate power, containing, and he had gangs that control 247 of 262 municipalities. The gangs were extorting 70% of businesses, and they were dislodging communities from their home and sending thousands of people to the United States. Can you explain how you think that the Durán Rodríguez, that seems to be the core of the BIA's decision, and so I'd like you to address that. Yes, Your Honor. In Durán Rodríguez, and I will give you the site in a moment, the court found that in assessing the acts of persecution involving threats, the trial fact has to assess the totality of circumstances, and in this particular case, the BIA failed to do so. It merely described what happened to Mr. Pleitez as a threat. That's all it was, minimal. It didn't look at the power of the gang. It didn't look at the fact that it took place at his own residence. It didn't look at the displacement of Mr. Pertés. Outside his home, where his business was, outside of his home, Mr. Pleitez had a sign advertising him to his local town as a lawyer with his number, which happened to be his cell number, where he received some strange calls following the death threats. So the BIA failed to address the totality of circumstances. And when he came to the United States after the threats, did he come by himself, or did he come with others in his family? Because the threats were directed to him, his wife, and his two minor children, they all fled together, a short period of time after the threats were made. So he gave up his entire practice as a lawyer. He came to this country, and his wife and his children were also placed in proceedings. But the case of the wife and the children has not been adjudicated by the Immigration Court at the present time. You say it has not been adjudicated for the wife and children? That is correct, Your Honor. It is still pending. Can you help me? So the case of Mr. Pleitez, for whatever reason, and sometimes it's the lack of a lawyer or a former lawyer, his case moving quickly through the court system. Can you help me here distinguish your case from Durán Rodríguez's decided by our court in 2019? Because in there we held that the death threats did not rise to the level of persecution, and the facts are at least close enough. I need to distinguish that case. Well, in this, yes, Your Honor. In this particular case, the BIA did not make a finding, a finding that the threats in the surrounding circumstances were on account of a protected ground. So the particular social group of Mr. Pleitez was not addressed, nor the issue of any relocation. No, I understand that. No, what I'm interested in is, in Durán Rodríguez, there were death threats, and we held that those death threats did not rise to the level of persecution. How were the death threats here any more serious than the death threats in Durán Rodríguez? The context, Your Honor. So same one. Help me out with the detail. Yes. The context is that it took place inside the business of Mr. Pleitez, that took place at his home. And they were seeking to engage him, engage him in rendering legal services for a criminal, which he declined to do. And if you look at the time, the context, the historical context, the threats had an immediacy. The immediacy was presented to him by his police friend, who advised him that he had a choice. The choice was either to stay and face the consequences, or to get out, or basically get out of the country, because the police was not going to be able to protect him. The gun was powerful. And as Mr. Pleitez indicated, when this gun made a threat, he had the power, and he was going to follow through. Mr. Quintanilla, I have a question if I could have you answer, please. Assuming the threats rose to the level of persecution, please tell me what's the protected ground that you would say the threat was on account of a protected ground? One of the protected grounds, Your Honor, is the attorneys being an attorney in El Salvador. An attorney, a person who is a fully licensed person, is in the same position as the registered nurse in the Plancarte case that was decided by this court last year. The Plancarte case, the court found that the fully licensed nurse in Mexico was a member of a conusable particular social group. It even indicated, the court indicated that the fact that this the person had this profession, that that was an immutable characteristic. Now, as I recall the Plancarte case, the BIA had assumed that that was a recognizable group, but said that, or it could be a cognizable group, but was not because she could change. But I don't think we got a clean holding out of the BIA that that was a cognizable group, did we? Or out of our court? I think we only said that, well, even the problem is she can't get out of it. And the BIA said she can get out of it. So I'm not sure Plancarte necessarily tells you that one's profession is a cognizable group, does it? Your Honor, I would agree with you. And that's one of the reasons why Plancarte was remanded to the BIA. Right. And in this case, I think the BIA did not reach the question as to whether or not this was a cognizable group. Correct. To one way or the other, that's not in front of us. That is correct, Your Honor. And I would not be opposed to a remand. And also I would not be opposed to a remand because my client is now eligible for the relief for voluntary departure in the alternative. Counsel, your time is almost up. I think I'd ask if you can close your argument and I'll still give you a minute for rebuttal time. Beyond your scheduled time. Thank you kindly, Your Honor. Just in summarizing, a remand is appropriate in this case because substantial evidence does not support the BIA's decision. Okay. Thank you, Counsel. So now we'll hear from Ms. Marshall. Your Honor, please, the court. I'm Lindsay Marshall on behalf of the Attorney General. The court should deny the petition for review in part for two reasons. First, petitioner did not exhaust the agency's dispositive finding that he had not shown the Salvadoran government was unable or unwilling to protect him. And second, substantial evidence supports the agency's determination that the unfulfilled threats petitioner received did not constitute past prejudice. And third, petitioner did not oppose remand in light of intervening precedent. And I would like to turn first to exhaustion. Petitioner's fleeting reference to the inability of the police to protect him was insufficient to put the board on notice that he was actually challenging the immigration judge's findings on the unable and unwilling issue when this one clause occurred in the context of a separate argument for remand. So, I mean, that's kind of, you know, I think an aggressive way to read the brief before the BIA because if that's true, he essentially filed a brief that was dead on arrival because it doesn't challenge one of the elements. And so we should read the brief as having been a word salad with no point to it. And so, I mean, that would be true if there's nothing in the brief. But I'm looking at the brief and the requirement to show that the persecution was committed by the government and by forces that the government was unable or willing to control is on page eight of the brief. And then it goes through about the menacing power of the 18th Street Gang in El Salvador and their ability to carry out threats, their ability to threaten the police, the fact that the police officer told them that the 18th Street Gang is too powerful, and even has the power and the courage to confront armed police, that's on page 12. And then on page 13, the IJ faulted Mr. Platas for not presenting specific documentation concerning the police and documentation on relocation. It may not be, you know, an elaborate brief, but I just picked through all the elements where he mentions the standard and explains in various places why the police are ineffective. I don't know why I'd find waiver on that kind of a record. But I think the crux of the unable and unwilling issue is not what the gang is able and willing to do. It's what the government is able and willing to do. And here, we have a brief that talks about the power and, I suppose, the fortitude of the gangs to carry out threats. But it's totally silent as to what the government itself is able and willing to do. And this is notable. You know, I have to say I disagree that it's totally silent. So if you're trying to count heads just for purposes of your argument, I would find the argument exhausted. So I would be more comfortable if you reach the merits. All right. Well, then let's start with the past persecution finding. Their substantial evidence still supports the agency's determination that two unfulfilled threats that petitioner received didn't rise to the level of persecution. And this ground alone is dispositive here. That would be dispositive. Here's the argument as to why these might be sufficient to constitute past persecution. I mean, the whole issue is, were these threats so serious that they rise to the level of persecution? And here's the evidence that they're serious. The woman comes in. She wants services. He refuses. She says, well, you're going to pay for that one. He gets a later phone call threatening him with death. Then he goes to a policeman who I will presume knows something about the circumstances in the town. And the circumstances of the town, according to the policeman, are, well, you either leave town or they're going to carry out the threat. That's what these people do. So this is not just a threat or a threat twice repeated. The seriousness of the threat is evaluated by the police officer who says, well, you can stay here and face the consequences, or you can leave. So why is that not a serious enough death threat? Well, I think the agency took that into account, but they... Well, I understand they took it into account, but I'm asking you, why is that not? I mean, taking into account doesn't mean they got it right. So I'm asking you, why is that not a serious enough death threat that any reasonable person would leave the country in order to avoid being killed? Sometimes the agency here pointed out a couple of other factors in this scenario that led them to believe that this was the kind of threat that wasn't so severe and imminent. And that was that no one, despite his belief that they were certain to try and come after him, no one did. No one came back to his house slash office, even after he left the country, no one asked about him. So what percentage likelihood of actually being carried out do we need before it's a threat that rises to the level of persecution? There's a case law that says 10% likelihood is enough. Is that right? That's true. But I think here what the agency was saying was even considering this background evidence and the words of his friend who said that the gangs are able to carry out threats and they might try, we have no one who came after him again. We have no one who came to his house. Well, no. Why would they come to his home? He and his family have left the home. Well, did the gangs know that? No, but they never made any attempt to go back. Well, and they never made any attempt. Well, and we don't even know that. Maybe they did, but nobody was home then to report it to him. All we have is a black hole. Well, we also have his testimony that no one ever contacted his family or that they were unaware of anyone who went looking for him. So in light of that, and with the fact that there was no confrontation that accompanied the threats, there was no harm to him and that there are only two threats. The agency thought this looked a lot like Duran Rodriguez, and it does. Just like in Duran, Petitioner received two threats from people he believed were connected to a violent gang. And just like in Duran, they never took any violent action against him, his family, or his property. On these facts, we just can't say that there is no reasonable fact finder that wouldn't agree with the agency. And that is the standard that Petitioner here has to meet. Does it make a difference, as I think the other side would argue, that Duran Rodriguez is Mexico and this one is in El Salvador, and El Salvador is, to take the sort of the standard characterization, the murder capital of the world? I don't think so, because in both cases, the agency was acknowledging background evidence. And still, they need to assess how that background evidence applies to the Petitioner's case. And here, they found that even in light of evidence in the country that crime is rampant, there was nothing that happened here that led them to believe that these threats were so imminent to this person that it constituted past persecution. I mean, these threats, to be sure, were frightening and criminal. But persecution is a different benchmark. Counsel, Judge Gould, if I can interject, I'm putting aside your lack of exhaustion segment, because I sense there's not going to be a majority for that. But my understanding is that what you're asking us to do is deny the petition, because the threats don't rise to the level of persecution under that Duran case, to deny in part, but also to grant in part, on voluntary departure, because the agency didn't have the benefit of Postos Sanchez. Yes, Your Honor. There are recent cases where this court has denied a petition on the merits of the application for protection of relief, but has still remanded on the issue of voluntary departure. And we agree with Petitioner that that is exactly what the court should do here. The agency does need to take another look at it based on the precedent that it didn't have at that time. Okay, thank you. I have no further questions. I don't know about Judge Fletcher, Judge Count. Well, if there are no further questions, I'll conclude here by simply saying that the court should uphold the agency's determination, because its substantial evidence supports its finding that the two unfulfilled threats that he received simply did not rise to the level of persecution. Okay, thanks. Thank you, counsel, for your argument now. Mr. Quintanilla. Your Honor, I just want to say thank you to Your Honor for considering the case. I believe this case should prevail under the facts and arguments presented to you, but we should give the BIA an opportunity to address all issues, including my client's eligibility for voluntary departure. I would thank you. Okay, you're very welcome. With this, the arguments are concluded. The case of Pulitzers v. Garland shall now be submitted, and the advocates will receive our decision in due course. And again, on behalf of the full panel, we really appreciate counsel appearing before us. Remotely like this during these times.
judges: FLETCHER, GOULD, COLLINS